UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| GREGORY A. WHITMAN and MONICA L. WHITMAN, | ) ) ) | No. 6:20-cv-254-REW-HAI |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | OPINION AND ORDER |
| CITIMORTGAGE, INC., | ) ) ) | |
| Defendant. | | *** *** *** *** |

Before the Court are the parties' cross-motions for summary judgment. *See* DE 36, 38. For the following reasons, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiffs' motion for summary judgment.

I.  **Background**[1]

Plaintiffs Gregory A. Whitman and Monica L. Whitman reside at 134 Trammel Lane in Corbin, Kentucky (the "Property"). *See* DE 1-1 at ¶ 1. On March 27, 2006, Plaintiffs obtained a mortgage loan from Wilmington Finance, Inc. *See id.* at ¶ 5. A note evidencing this loan was secured by a mortgage on the Property. *See id.* Roughly three years later, on June 5, 2009, Defendant CitiMortgage acquired the loan. *See id.* Thereafter, Plaintiffs made monthly payments to Defendant. *See* DE 37-1 at 6 (M. Whitman Dep.).

In early 2017, Defendant notified Plaintiffs via mail that it had transferred ownership and servicing of the loan to third parties. *See* DE 36-5, 36-6, 38-4, 38-5. Specifically, on December

---

[1] There is little factual dispute; the Court describes the background here, on cross-motions, through the prism of the Rule 56 rubric.

1

21, 2016, Defendant transferred ownership of the loan to Towd Point Master Funding Trust 2016-PM18 ("Towd"). *See* DE 36-6, 38-5. Similarly, on February 1, 2017, Defendant transferred servicing of the loan to Select Portfolio Servicing, Inc. ("SPS"). *See* DE 36-5, 38-4. Plaintiffs concede receipt of these notices when sent. *See* DE 37-1 at 9-10, 40 at 12-13. Indeed, Plaintiffs dealt with and made payments to SPS following the servicing transfer. *See* DE 37-1 at 8.

In May 2018, Plaintiffs refinanced their loan via a new lender. *See* DE 1-1 at ¶ 7. To satisfy the original loan, Plaintiffs directed payment to SPS, as they had been making monthly payments to that servicer. *See* DE 37-1 at 12. Although Plaintiffs satisfied the amount due on the loan with SPS, they later discovered that release of the original mortgage was not recorded in the Whitley County Clerk's Office. *See id.* at ¶ 8. Accordingly, Plaintiffs sent written notice to Defendant in a letter by counsel dated July 25, 2019, requesting that Defendant release the prior mortgage. *See id.* at ¶ 9, DE 36-12, 38-11. Defendant responded eight days later and informed Plaintiffs it could not release the mortgage because SPS serviced the mortgage and received the final payoff funds. *See* DE 38-12, 40-4. Thus, Defendant advised Plaintiffs to contact SPS to obtain a release. *See id.* Plaintiffs never contacted SPS. *See* DE 38 at 3. Instead, on August 13, 2019, Plaintiffs responded to Defendant and again demanded that Citi release the original mortgage. *See* DE 38-13, 40-5.

After unsuccessfully asking Defendant to release the mortgage, on November 16, 2020, the Whitmans initiated this lawsuit in the Whitley County Circuit Court. *See* DE 1-1. Plaintiffs' Complaint alleged that Defendant violated Kentucky's lien-release statute, KRS § 382.365.[2] *See*

---

[2] KRS § 382.365 reads, in pertinent part:
    (1) A holder of a lien on real property . . . shall release the lien in the county clerk's office where the lien is recorded within thirty (30) days from the date of satisfaction.

2

Case: 6:20-cv-00254-REW-HAI   Doc #: 43   Filed: 09/19/22   Page: 3 of 16 - Page ID#: 588

*id.* at ¶¶ 11-12.  Defendant removed the case to this Court.  *See* DE 1.  Subsequently, CitiMortgage joined Towd and SPS as Third-Party Defendants.  *See* DE 20.

In the mist of the legal proceedings, on February 17, 2021, involved entities recorded assignments of the historical mortgage in Whitley County.[3]  *See* DE 38-14.  On July 1, 2021, Towd released Plaintiffs' mortgage.  *See* DE 38-15.

Now, the cross-motions are fully briefed and ripe for ruling.  *See* DE 36, 38, 39, 40.

## II.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  In determining whether a genuine dispute exists, the court considers all facts and draws all inferences in the light most favorable to the non-moving party.  *See Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v.*

---

(2)  An assignee of a lien on real property shall record the assignment in the county clerk's office as required by KRS 382.360.  Failure of an assignee to record a mortgage assignment shall not affect the validity or perfection, or invalidity or lack of perfection, of a mortgage lien under applicable law.
(3)  A proceeding may be filed by any owner of real property or any party acquiring an interest in the real property in District Court or Circuit Court against a lienholder that violates subsection (1) or (2) of this section. A proceeding filed under this section shall be given precedence over other matters pending before the court.
(4)  Upon proof to the court of the lien being satisfied by payment in full to the final lienholder or final assignee, the court shall enter a judgment noting the identity of the final lienholder or final assignee and authorizing and directing the master commissioner of the court to execute and file with the county clerk the requisite release or assignments or both, as appropriate. The judgment shall be with costs including a reasonable attorney's fee. If the court finds that the lienholder received written notice of its failure to release and lacked good cause for not releasing the lien, the lienholder shall be liable to the owner of the real property or to a party with an interest in the real property in the amount of one hundred dollars ($100) per day for each day, beginning on the fifteenth day after receipt of the written notice, of the violation for which good cause did not exist.

. . .

KY. REV. STAT. ANN. § 382.365(1)-(4) (West 2006).
[3] While Defendant notified Plaintiffs in 2017 that it transferred ownership and servicing of the loan to Towd and SPS, *see* DE 36-5, 36-6, 38-4, 38-5, Defendant did not formally record assignment until February 17, 2021.  *See* DE 38-14.

3

*Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Further, the court may not "weigh evidence [or] determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to produce "specific facts" showing a "genuine issue" for trial. *Id.* However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Id.* at 2552.

A fact is "material" if the underlying substantive law identifies the fact as critical. *See Anderson*, 106 S. Ct. at 2510. Then, "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* An issue is "genuine" is "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511 (citing *First Nat'l Bank of Az. v. Cities Servs. Co.*, 88 S. Ct. 1575, 1592 (1968)). Such evidence must be suitable for admission into evidence at trial. *See Salt Lick Bancorp v. FDIC*, 187 Fed. App'x 428, 444-45 (6th Cir. 2006).

When parties file cross-motions, the summary judgment standard remains the same. *See Taft Broad Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). The court "must evaluate each party's motion on its own merits" and, in doing so, "draw all reasonable against the party whose motion is under consideration." *Id.* (citation omitted); *accord Lasing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

**III.    KRS § 382.365**

Pursuant to § 382.365, a lienholder must release any lien against real property within 30 days of the date of satisfaction of the underlying debt. *See* KY. REV. STAT. ANN. § 382.365(1). The statute goads the filing with a cause of action. Under this statute, "[i]f the court finds that the lienholder received written notice of its failure to release and lacked good cause for not releasing the lien, the lienholder shall be liable to the owner of the real property . . . ." *Id.* at § 382.265(4). Stated differently, if a final lienholder or assignee fails to release a lien after satisfaction, the property owner is entitled to relief upon establishing that: (1) the property owner satisfied the note through payment to the final lienholder or final assignee; (2) the final lienholder or final assignee received written notice of its failure to release the lien; and (3) after receiving notice, the final lienholder or assignee lacked good cause for not releasing the lien.[4] *See PNC Bank, Nat'l Ass'n v. Riley*, 2021 WL 5751651, at *2 (Ky. Ct. App. 2021).

In this instance, the parties dispute the second and third elements.[5] To satisfy the second element—written notice of failure to release the lien—notice must be: (1) properly addressed; (2) delivered in person or via certified mail; (3) to the final lienholder or assignee. *See* KY. REV. STAT. ANN. § 382.365(4). The third element—good cause—is a question of law based on the totality of the circumstances. *See Hall v. Mortg. Elec. Registration Sys., Inc.*, 396 S.W.3d 301, 305 (Ky. 2012).

IV. **Summary Judgment Analysis**

   a. **Final Lienholder or Assignee**

First, both parties assert they are entitled to summary judgment based on the issue of whether the Whitmans satisfied the written notice requirements outlined in § 382.365(4). *See* DE

---

[4] A lienholder that violates the statute is liable for $100 per day, beginning fifteen days after the lienholder received written notice of its violation. *See* KY. REV. STAT. ANN. § 382.365(4). After 45 days, this penalty increases to $500 per day. *See id.* at § 382.365(5). Good cause, though, blocks these per diem damages.
[5] The parties do not dispute that the Whitmans satisfied the loan. *See* DE 36 at 9, 38 at 10.

5

36 at 11, 38 at 11. As noted above, to satisfy the statute's written notice requirement, Plaintiffs must show they provided the final lienholder or assignee written notice of its failure to release the lien. *See* KY. REV. STAT. ANN. § 382.365(4).

In this instance, the parties dispute whether Defendant was "the final lienholder or assignee" under § 382.365(4). Plaintiffs assert they satisfied § 382.365(4)'s requirements because Defendant was the final lienholder or assignee when it received Plaintiffs' written notice in 2019. *See* DE 36 at 12. To support this argument, the Whitmans correctly note that CitiMortgage remained the mortgage holder of record, in the Whitley Clerk's office, until assignment recordation in February 2021. *See* DE 36-18. The lien was in the name of CitiMortgage, which was the entity the Whitmans notified. Accordingly, because Plaintiffs sent Defendant written notice on July 25, 2019—eighteen months before Defendant recorded assignment to Towd—Plaintiffs argue Defendant was the final assignee, and thus, final lienholder, at the time of notice. *See* DE 36 at 12.

CitiMortgage submits that Plaintiffs did not satisfy § 382.365(4)'s requirements because SPS (or, formally, Towd) was the final lienholder when Plaintiffs satisfied their mortgage. *See* DE 38 at 11. Defendant interprets "final lienholder or assignee" to mean the party that received the funds to satisfy the underlying debt. *See id.* Accordingly, Defendant argues that because Plaintiffs satisfied the loan by making payments to SPS, SPS was or at least represented the true final lienholder. *See id.* Further, while Defendant acknowledges it did not record assignment until February 17, 2021, *see* DE 38-14, it maintains Plaintiffs knew SPS (for Towd), not Defendant, was the final lienholder. *See* DE 38 at 12. Defendant notes it advised Plaintiffs to contact SPS to release the prior mortgage, which Plaintiffs did not do. *See id.* at 11-12. Further, Defendant cites to the two 2017 letters it sent, which informed the Whitmans it transferred the ownership of the

6

loan to Towd in December 2016 and the servicing of the loan to SPS in February 2017.  *See id*. at 12; *see also* DE 37-1 at 9-10, 40 at 12-13.  Lastly, Defendant alleges that because it transferred ownership and servicing of the loan, under Kentucky law, it had no right to enforce or release the lien.[6]  *See id.*

Here, there is a genuine dispute as to whether Plaintiffs satisfied § 382.365(4)'s notice requirement.  This issue turns on whether Defendant was the "final lienholder or final assignee" when Plaintiffs sent written notice.  Notably, the statute does not define this term.  *See* KY. REV. STAT. ANN. § 382.365.  As such, the parties offer competing interpretations in their cross-motions, each of which has evidentiary support.

On one hand, a reasonable jury could conclude Plaintiffs satisfied § 382.365(4)'s notice requirement on the basis that "final lienholder or assignee" means the party reflected in courthouse records as the current lienholder or assignee of the mortgage.  Kentucky's recording statute draws a distinction between note transfers—which *may* be recorded, and mortgage assignments—which *must* be recorded.  *Compare* KY. REV. STAT. ANN. § 382.290(2) (West 2016) ("When any note named in any deed or mortgage is assigned to any person, the assignor may . . . note such assignment in the blank space, or in a marginal entry record [in the county clerk's office]."), *with* KY. REV. STAT. ANN. § 382.360(3) (West 2020) ("When a mortgage is assigned to another person, the assignee shall file the assignment for recording with the county clerk within thirty (30) days of the assignment.); *see also Higgins v. BAC Home Loans Servicing, LP*, 793 F.3d 688, 692 (6th Cir. 2015) ("The text, structure, and purposes of Kentucky's recording statutes compel the conclusion

---

[6] Defendant writes, "[t]he right to enforce a promissory note … along with its accompanying liens and obligations, springs from possession of the note itself, rather than a mortgage document and its proper assignment to another party." *See* DE 38 at 12 (quoting *Brian v. Westvue NPL Tr. II,* No. 2013-CA-001544-MR, 2017 WL 4708368, at *2 (Ky. App. Oct. 20, 2017)).

that recording is not required when a party acquires merely an interest in the mortgage, without acquiring the actual mortgage deed."). In this instance, Defendant did not record assignment of the mortgage with the Whitley County Clerk's office until February 17, 2021. *See* DE 36-18, 38-14. [And, the record is lacking on exactly when the formal assignment took place.[7]] Thus, given that Kentucky's recording statute requires assignment recordation, a reasonable jury could conclude Defendant was the "final lienholder or assignee" when Plaintiffs sent notice in July 2019. Nominally at least, as of the refinance, CitiMortgage both held the lien and had received the last assignment. The fact that the Clerk's records showed no further assignment supports Plaintiffs' view.[8]

In contrast, a reasonable jury could also conclude Plaintiffs did not satisfy § 382.365(4)'s notice requirement because "final lienholder or assignee" means the party that received the funds to satisfy the underlying debt. Section 382.365(2) states the "[f]ailure of an assignee to record a mortgage assignment shall not affect the validity or perfection, or invalidity or lack of perfection, of a mortgage lien . . . ." KY. REV. STAT. ANN. § 382.365(2). Indeed, as CitiMortgage argues, the Kentucky Court of Appeals has held the right to enforce a promissory note (and an associated lien) hinges on what entity holds the note, not the logistics of mortgage assignment. *See Brian*, No. 2013-CA-001544-MR, 2017 WL 4708368, at *2; *Stevenson v. Bank of Am.*, 359 S.W.3d 466, 470 (Ky. App. Ct. Oct. 7, 2011) ("In Kentucky, it is the transfer of a negotiable instrument, not the assignment of a mortgage, which transfers enforcement rights . . . ."). While Defendant did not

---

[7] The record shows that CitiMortgage transferred its full interest in the note on December 21, 2016 and February 1, 2017. *See* 38 at 5, 40 at 9-10. That document is not in the record, so it is not clear whether it purported to transfer the legal interest in the mortgage. The transfer document appears to be the February 2021 entry.

[8] Further, the Court notes that CitiMortgage, through its evident agent Verdugo, did not cast itself as having assigned the mortgage when it responded to Plaintiffs' demand. *See* DE 38-14 (stating only that "[t]his loan was transferred for servicing to [SPS]"). Defendant does not suggest that a servicing transfer alone would supplant the statutory duties.

record assignment of the lien until February 17, 2021, both Plaintiffs and Defendant cite to a January 2017 letter where Defendant informed Plaintiffs it intended to transfer servicing of the loan to SPS.  *See* DE 36-5 at 1, 38-4 at 1.  Further, Defendant did transfer its full interest in the note in December 2016.  *See* DE 38-5 ("The ownership of your mortgage loan has been transferred [to Towd]."); DE 38-16 ¶ 9 ("CitiMortgage transferred ownership of the Loan and Note . . . effective December 21, 2016.").  Plaintiffs indisputably got notice that CitiMortgage had sold the loan.  Indeed, Plaintiffs paid SPS monthly after the servicing transfer and remitted the 2018 payoff to SPS, *not* CitiMortgage.

Thus, viewed in this way, CitiMortgage was an assignee and a lienholder but not the "final" entity in either category.  There is a clash here between record status, under Kentucky law and its system of documentation, and what the true situation was, as known to the participants.  The Court would grant neither side judgment on this discrete statutory element.

### b. Good Cause

Next, the parties dispute whether Defendant had good cause for not timely releasing Plaintiffs' original mortgage.  *See* DE 36 at 12, 38 at 13.  As discussed above, under § 382.365, a property owner can recover statutory penalties against a lienholder that received proper written notice and lacked "good cause" for failing to release the lien.  *See* KY. REV. STAT. ANN. § 382.365(4).  The Kentucky Supreme Court noted good cause "provides lienholders with an affirmative defense to the imposition of statutory penalties."  *Hall*, 396 S.W.3d at 305.

Whether good cause exists is a question of law based on the totality of the circumstances. *See id.*  For instance, in *Bank of America v. Boone National Bank*, the Kentucky Appellate Court concluded good cause did not exist where a bank intended to release a mortgage but, through

9

administrative lapse, inadvertently failed to do so. *See Bank of Am. v. Boone Nat'l Bank*, No. 2004-CA-002422-MR, 2006 WL 504999, at *2 (Ky. Ct. App. Mar. 3, 2006) (finding the bank "could no longer presume its system was working and was obliged to take further steps to ensure prompt compliance with KRS 382.365"). Comparatively, in *Wolter v. U.S. Bancorp*, the Kentucky appellate court determined a bank had good cause for refusing to release a mortgage where a mathematical error led the bank to believe, in good faith under a legitimate controversy, that the supporting loan had not fully been paid and that the lien release duty had not ripened. *See Wolter v. U.S. Bancorp*, No. 2003-CA-002788-MR, 2004 WL 2984882, at *1-*3 (Ky. App. Ct. Dec. 23, 2004).

In this instance, Plaintiffs contend Defendant lacked good cause for failing to release the lien. *See* DE 36 at 12-13. Specifically, Plaintiffs argue Defendant cannot claim good cause based on SPS's alleged inaction. *See id.* at 12. In support, Plaintiffs first argue this case is factually similar to *Bank of America*. *See id.* Second, Plaintiffs aver the Kentucky Supreme Court limited the application of *Wolter* to circumstances where a "human calculation error created a good faith dispute[.]" *Id.* at 14 (quoting *Hall*, 36 S.W.3d at 306).

Contrary to Plaintiffs' argument, Defendant states it does not claim good cause exists because of SPS's alleged inaction. *See* DE 39 at 10. Indeed, Defendant argues *Bank of America* is inapplicable to this case because Defendant does not claim it attempted to release Plaintiffs' mortgage but made a mistake in the process. *See id.* at 10-11. Rather, Defendant claims it had good cause for not releasing the mortgage because it no longer had authority to release after transferring ownership and servicing of the loan to Towd and SPS. *See* DE 38 at 14. As such, Defendant argues this case is similar to and decided by *Village Campground v. Liberty Bank*, where the Kentucky Court of Appeals found the subject bank had good cause for not releasing a

10

mortgage lien, previously assigned, because the defendant "could not release a mortgage that it no longer held." *Village Campground, Inc. v. Liberty Bank*, Nos. 2007-CA-001454-MR, 2007-CA-001487-MR, 2008 WL 4998478, at *3 (Ky. App. Ct. Nov. 26, 2008).

In response to Defendant's transfer of ownership argument, Plaintiffs assert that, by failing to record the assignment, Defendant remained responsible for non-release of the mortgage. *See* DE 40 at 15. Plaintiffs claim that Defendant's letters only put them on notice "that an assignment of the subject mortgage was possibly pending." *Id.* at 13. Further, Plaintiffs assert that because Defendant did not record assignment, it would have been "invalid and ineffective" to contact Towd or SPS regarding the non-release. *Id.* at 17. Finally, Plaintiffs claim that if contacting SPS would have rectified the issue, Defendant itself could have contacted SPS with Plaintiffs' written demand. *See id.*

Here, even if a jury were to find Defendant was the "final lienholder or assignee," the Court finds that CitiMortgage had good cause for failure to release the mortgage. As an initial matter, the Court does not agree that this case is factually similar to *Bank of America*. In its motion for summary judgment and its reply to Plaintiffs' motion for summary judgment, Defendant does not assert good cause exists because of SPS's inaction, and Plaintiffs do not point the Court to any section of Defendant's brief that advances this argument. *See* DE 36, 38, 39, 40. Rather, contrary to the defendant in *Bank of America*, Defendant consciously made a choice to not release Plaintiffs' lien. *See* DE 38 at 14. If there are any similarities between this case and *Bank of America*, Plaintiffs do not articulate them; rather, Plaintiffs' argument simply rehashes the facts of *Bank of America*. *See* DE 36 at 12-14.

Kentucky's treatment of the note and mortgage interests decides the good cause defense. Even if, as seems to be the case, CitiMortgage merely transferred its full interest in the loan (but

11

not, technically, the mortgage), the note transfer had the effect of conveying the mortgage-lien right as well. To quote the Kentucky court of appeals:

> Under Kentucky law, it is well settled that the "transfer of a promissory note effects a transfer of an equitable interest in any corresponding mortgage." *Higgins v. BAC Home Loans Servicing, LP*, 793 F. 3d 688, 691 (6th Cir. 2015) (citing *Drinkard v. George*, 237 Ky. 560, 36 S.W.2d 56, 57 (1930)). In Kentucky, it is the transfer of a negotiable instrument, not the assignment of a mortgage, which transfers enforcement rights to a real party in interest. *Stevenson v. Bank of America*, 359 S.W.3d 466, 470 (Ky. App. 2011).

*Kelley v. US Bank N.A.*, No. 2019-CA-1227-MR, 2021 WL 2385828, at *4 (Ky. Ct. App. June 11, 2021), *review denied*, (Dec. 8, 2021). Thus, transfer of the note placed the mortgage interest under the ultimate control of the transferee (Towd) rather than the transferor (CitiMortgage). At a bare minimum, CitiMortgage could not on its own have released a mortgage in which it had only a bare legal interest, that of a mortgagee with no enduring stake in the underlying loan. Towd, the note holder, had the equitable claim to enforcement of the lien, and only Towd could ultimately release said lien in response to note satisfaction. On this conclusion, Kentucky law is clear. *See Christian Cnty. Clerk ex rel. Kem v. Mortg. Elec. Registration Sys., Inc.*, 515 F. App'x 451, 455 (6th Cir. 2013) ("[T]he Kentucky courts have long recognized that the assignment of a note secured by a mortgage transfers the interest in the underlying mortgage.").

When notified of the issue, CitiMortgage immediately directed the Whitmans to SPS, the entity they had been paying and the entity they paid with the refi proceeds. Perhaps CitiMortgage could have taken further steps, but surely so could the Whitmans. Because of its legal status at the time, CitiMortgage had good cause for not executing a document it had no right to issue. As was true in *Village Campground*, CitiMortgage no longer had a beneficial interest in the lien and thus was without the authority to release. This is good cause, protecting CitiMortgage from liability under the statute.

### c. Doctrine of Laches

Finally, Defendant argues it is entitled to summary judgment because laches bars Plaintiffs' claims. *See* DE 38 at 17. The doctrine of laches bars a party from asserting a claim where there is "(1) an unreasonable delay in asserting one's rights; and (2) a resulting prejudice to the defending party." *Brown-Graves Co. v. Cent. States, Se. & Sw. Areas Pension Fund*, 206 F.3dc 680, 684 (6th Cir. 2000). The doctrine's purpose is to prompt a party to assert its rights before "evidence is lost, memories have faded, and witnesses have disappeared." *Combs v. Int'l Ins., Co.*, 354 F.3d 568, 590 (6th Cir. 2004). As part of determining whether a delay was unreasonable or prejudicial, courts typically reference the relevant statute of limitations. *See, e.g.*, *McKeon Prods., Inc. v. Howard S. Leight & Assocs., Inc.*, 15 F.4th 736, 744 (6th Cir. 2021) ("If a plaintiff asserts a claim within the statutory period, there is a strong presumption that claim is timely and not prejudicial.").

Here, Defendant argues Plaintiffs unreasonably delayed asserting their rights because they filed their Complaint on November 11, 2020, 475 days after sending Defendant putative written notice. *See* DE 40 at 17. Defendant claims the instant case is similar to *Union Planters Bank, N.A. v. Hutson*, where the court found that 234 days constituted an unreasonable delay. *See* DE 38 at 18 (citing *Union Planters Bank, N.A. v. Hutson*, 210 S.W.3d 163, 167 (Ky. App. Ct. 2006)). Further, Defendant asserts this case is similar to *Forester v. Stearns Bank*, where the court said the doctrine of laches barred the plaintiffs from recovery under § 382.365 because the period between plaintiff's statutory notice and filing of the complaint—817 days—was unreasonable and plaintiffs suffered no actual damages. *See id.* (citing *Forester v. Stearns Bank, N.A.*, No. 5:12-CV-00080, 2013 WL 1453376 (W.D. Ky. Apr. 9, 2013)). Lastly, Defendant argues that by waiting over one year to initiate the instant action, Plaintiffs prejudiced Defendant because § 382.365 imposes daily

13

statutory penalties. *See id.* at 19. Defendant notes Plaintiffs seek $337,000 in statutory penalties, more than double the balance that was once due on their loan. *Id.* at 19.

In response, Plaintiffs first argue *Hutson* is distinguishable from this matter because a primary issue in that case was that the plaintiff sent written notice via regular first-class mail[9] and the mortgagee denied receiving notice. *See* DE 40 at 17. Additionally, Plaintiffs call *Forester* a "vast departure" from *Hutson*'s holding that claimants acting in good faith can recover under § 382.365. *See id.* at 19. Finally, Plaintiffs assert Defendant is not cognizably prejudiced because Plaintiffs filed their Complaint within the five-year statute of limitations period. *See id.* at 19-20.

As an initial matter, Plaintiffs brought their action within the applicable statutory period. § 382.365 does not specify a statutory period. *See* KY. REV. STAT. ANN. § 382.365. When a statute does not prescribe a statutory period, the action must be brought within five years. *See* KY. REV. STAT. ANN. § 413.120 (West 2015); *see also Utley v. First Citizens Bank of Hardin Cnty.*, 2002-CA-001267-MR, WL 12199394, at *1 (Ky. App. 2003) ("The limitations period appliable to a claim under KRS 382.365 is five years."). Under § 382.365(4), the cause of action accrues 15 days after the lienholder receives written notice. *See* KY. REV. STAT. ANN. § 382.365(4). Defendant received written noticed on August 2, 2019.[10] *See* DE 1-1 at ¶ 9. Accordingly, the limitations period began to run on August 17, 2019. Plaintiffs filed their Complaint on November 11, 2020, within the five-year period. *See* DE 1-1.

Given that Plaintiffs filed within the applicable statutory period, on this record, Defendant would not be entitled to summary judgment under the doctrine of laches. Plaintiffs note they waited until November 2020 to file suit because they were "waiting for a response [from

---

[9] The *Hutson* case occurred before the Kentucky Legislature enacted the current version of § 382.365. The previous version, which applied in *Hutson*, did not set out specific requirements regarding written notice. *See* KY. REV. STAT. ANN. § 382.365 (West 2000).
[10] Plaintiffs sent the letter on July 25, 2019, but Defendant did not receive it until August 2, 2019.

Defendant]" and "giving [Defendant] time[.]"  DE 37-1 at 16.  Thus, although Defendant argues Plaintiffs had an "unexplainable" delay, *see* DE 38 at 19, Plaintiffs do offer *some* reasoning as to why they waited.  This is distinguishable from *Forester*, where the plaintiffs offered "no explanation for their delay other than to argue that they had no burden to act[.]" *Forester*, No. 5:12-CV-00080, 2013 WL 1453376, at*10.  Further, the fact that Plaintiffs waited until November 2020 to file suit does not in itself indicate an unreasonable delay.  Indeed, aside from the passage of time, Defendant offers no evidence to demonstrate Plaintiffs acted unreasonably.

Moreover, Defendants fail to demonstrate that Plaintiffs' decision to file suit in November 2020 prejudiced Defendant, at least in the laches context.  The Court recognizes the fact that Plaintiffs filed their Complaint over one year after sending Defendant written notice results in some prejudice (at least, as a statutory multiplier) to Defendant.  To be sure, under § 382.365, a lienholder's potential liability increases each day a property owner waits to file a complaint.  However, the sole fact that Defendant faces increased liability under a statute does not persuade the Court that summary judgment would otherwise be appropriate on doctrine of laches grounds.  Given the five-year statute of limitations, in setting the daily $100 penalty, the Kentucky Legislature surely contemplated this scenario.  Further, this scenario is distinct from *Hutson* because in that case plaintiffs sent written notice, failed to follow up with defendant when defendant did not release the lien, and filed suit.  *See Hutson*, 210 S.W.3d at 165.  By contrast, here, Plaintiffs confirmed Defendant received notice and had some following communication with Defendant.  Finally. Defendants do not indicate any prejudice relating to the loss of witnesses or evidence.  CitiMortgage did, of course, have awareness of the underlying problem and could have avoided any ensuing prejudice from delay.

Accordingly, Defendant, if the claim otherwise persisted, would not be entitled to summary judgment based on the doctrine of laches.

## V. Conclusion

For the above reasons, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiffs' motion for summary judgment. The Court accordingly will enter a separate judgment.

This the 19th day of September, 2022.

Signed By:
*Robert E. Wier*
United States District Judge